## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

PAULA MASCENDARO,                  )
4808 Clark Lane                    )    Case No.:
Columbia, MO 65202                 )
                                   )
SAMUEL MERRILL                     )
22 Reybury Lane                    )
Palm Coast, FL 32164               )
                                   )
            Plaintiffs,            )
     vs.                           )
                                   )
LINDA SADR,                        )
9851 Flint Rock Road               )
Manassas, VA 20112                 )
                                   )
     -AND-                         )
                                   )
DOE COMPANIES (1-7),               )
                                   )
            Defendants.            )

## **COMPLAINT**

COMES NOW, Samuel Merrill and Paula Mascendaro (hereinafter "Plaintiffs"), by and

through their undersigned attorneys, and files this complaint against Linda Sadr, and Doe

Companies (1-7), and in support thereof states as follows:

### PARTIES AND JURISDICTION

1.     Plaintiff, Samuel Merrill, is a resident of the State of Florida, residing at 22

Reybury Lane, Palm Coast, Florida, 32164.

2.     Plaintiff, Paula Mascendaro, is a resident of the State of Missouri, residing at

4808 Clark Lane, Columbia, Missouri, 65202.  Plaintiff was previously known as Paula Merrill.

-1-

2.    Defendant, Linda Sadr (hereinafter "Sadr"), upon information and belief, is a resident of the Commonwealth of Virginia, residing at 9851 Flint Rock Road, Manassas, Virginia, 20112.

3.    Defendant, Doe Companies (1-7), are presently unknown fictitious companies, entities, or associations who, upon information and belief, were owned and/or controlled by Linda Sadr, or alternatively, permitted Linda Sadr to act as an agent or employee thereof. Plaintiffs are, at this time, unaware of the true capacities and addresses of these various entities, and therefore sues using fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities when fully ascertained.

4.    Plaintiff invokes this Court's jurisdiction under 28 U.S.C. 1332 and 28 U.S.C. 1441(b) on the grounds that complete diversity of citizenship exists among the parties and the matter exceeds the sum of $75,000 dollars, exclusive of interests and costs.   Venue is proper in this Court as a substantial part of the events or omissions giving rise to the claims occurred in Maryland.  More specifically, Sadr and her Doe Companies and their agents engaged in conduct targeting Plaintiffs and assets in the State of Maryland, transacted business in Maryland, and were present in the state on numerous occasions for the purposes of conducting activities in furtherance of the purposes and deceptive scheme described herein.

## SUMMARY OF AVERMENTS

5.    This is an action to address a fraudulent ponzi or asset transfer scheme which was orchestrated by the Defendants for the purpose of defrauding investors of hundreds of thousands

of dollars of equity in their homes with false promises that the encumbered properties would be

owned free and clear and/or that the monies supplied by the investors would be placed in high

return investments which was never done.

## FACTS PERTAINING TO PAULA MASCENDARO

6.      In 2005, Plaintiff Paula Mascendaro met with an individual named Jennifer

Barrett who at that time claimed to work for Defendant Linda Sadr.  Ms. Barrett represented that

Linda Sadr operated a unique "free and clear" program that was open to select owners of real

property in Maryland, Virginia and other states.

7.      The phrase "free and clear" was explained to mean that program participants

who had mortgage obligations on their real property would have their encumbrances removed

and/or satisfied in return for a significant monetary investment in the program.  In other words,

program participants would receive their properties free and clear of any mortgage obligation.

8.      The specifics of the program first required the investor to refinance his or her

existing home at a rate and in an amount to be determined by Linda Sadr.  The equity or monies

obtained through the refinancing were then given to Linda Sadr or her Doe Companies to cover

such items as legal expenses, administrative fees, and other monies associated with the program.

In return for the investment, Linda Sadr or her Doe Companies represented that they would pay

off the refinanced mortgage amounts within a period of eighteen months during which time Sadr

and her Doe Companies would have the property removed of its mortgage encumbrance.  If the

property was not cleared from all mortgage encumbrances within this time frame, Sadr would

-3-

additionally make all mortgage payments until they could provide full restitution of all monies previously given.

9.     Linda Sadr induced Paula Mascendaro to enter into the program, and further had her employee and agent show a copy of a deed on a property that she owned free and clear as proof that they had successfully completed or "graduated" from the program. Ms. Merrill was not given details and specifics on the workings of the program, but was generally informed that it involved negotiating with lenders, acts which required program participants to execute a power of attorney in favor of Linda Sadr and her Doe Companies.

10.     At the time Plaintiff Paula Mascendaro entered into the program, she owned a property at 4329 Isleswood Terrace in Burtonsville, Maryland. Her property was subject to a first mortgage through Synergy Mortgage Corporation with a balance of $189,044 dollars. As a condition for entering the program, Ms. Merrill was required to refinance her property by taking out a note in favor of Encore Credit Corporation for $294,500 dollars. The prior mortgage from Synergy Mortgage Corporation was paid off as a result of the refinance, netting a total amount of $105,456 dollars from the transaction. The refinancing of the property was recorded on or about January 13, 2006. Linda Sadr and her Doe Companies took the full amount of these monies.

11.     As a result of refinancing her property, the new monthly mortgage payment on the property was in the amount of $2,782.58 dollars. As part of the program, Sadr and her Doe Companies indicated that they would pay the monthly mortgage payment on the property for a period of eighteen (18) months during which time Sadr and her Doe Companies would have the

property removed of its mortgage encumbrance. If the property was not cleared from all mortgage encumbrances within this time frame, Sadr and her Doe Companies would agree to continue making the monthly mortgage payments until they could provide full restitution of all monies previously given by Ms. Mascendaro.

12.     In the months that followed, Sadr and her Doe Companies made the monthly mortgage payments on Ms. Mascendaro's property and made numerous representations that her property was in the process of becoming free and clear, and that she should expect to receive a "reconveyance," a phrase which Sadr explained was a legal confirmation that program participants such as Ms. Mascendaro would receive an unencumbered deed to her property without any mortgage commitments or cloud on title. Ms. Mascendaro was given assurances that she would "graduate" the program within the initial eighteen month period and own her property free and clear. During this time period, Ms. Mascendaro was asked and did provide two separate Power of Attorneys in favor of Sadr and her Doe Companies for representation pertaining to mortgages, notes, debts and liens.

13.     In November of 2007, Sadr and her Doe Companies stopped making monthly mortgage payments on Ms. Merrill's property.   Sadr did not advise Ms. Merrill that payments on the mortgage obligation had ceased, but instructed Ms. Mascendaro and other program participants to obtain payoff statements from their respective mortgage companies effective December 31, 2007, indicating that the reconveyance would be accomplished by that time.

14.     In or around December of 2007, Ms. Mascendaro was first advised by her lender

that the loan on her property was delinquent. Ms. Mascednaro became alarmed and attempted to confer with Ms. Sadr concerning the situation. Sadr communicated to Ms. Mascendaro and other program participants that "...most of you are almost finished...."implying that their properties were almost free and clear. Ms. Sadr also indicated that "...if your mortgage is not discharged by 12/31, you will be given the opportunity to meet with me directly...."

15.    In subsequent correspondence, Sadr began to advise Ms. Mascendaro and other program participants that they should respond to delinquent inquiries from their lenders by misrepresenting to the lender that they are in the process of refinancing their loans.

16.    By January of 2008, Ms. Mascendaro had still not received any "reconveyance" for her property and, in fact, began receiving phone calls from her lender indicating that she was at risk of foreclosure if her account was not paid current. Ms. Mascendaro left numerous messages attempting to get Sadr to bring her account current and make the mortgage payments. The messages were not returned. Fearing the loss of her home, Ms. Mascendaro personally paid the monthly mortgage payments for December of 2007 and January of 2008 to bring her account current.

17.    On or about January 22, 2008, Sadr scheduled a conference available to all program participants, the majority of whom were minorities. The conference was held at a Courtyard by Marriott in Virginia. More than one hundred people attended and security was tight. All participants were asked to show proper identification and the doors to the conference room were locked during the meeting. Ms. Mascendaro attended this meeting.

18.     Sadr spoke during the meeting and explained that many program participants had already graduated from the program. For the first time, Sadr attempted to provide details of the program. Participants were told there was a loophole in the law, and that the lenders on the properties for participants who had not graduated could not legally foreclose because they were not the true holders of the notes. Sadr informed the participants that she was hiring attorneys to file a federal lawsuit within the next 2-3 weeks on behalf of all non-graduating participants to obtain their properties free and clear. Upon information and belief, no such lawsuit was ever filed on behalf of Ms. Merrill. During the meeting, Sadr also asked that all program participants destroy any emails and any notes they have regarding the program.

19.     In early February of 2008, Sadr's agents forwarded an email informing all program participants that they would have proof that their property had been reconveyed not later than February 28, 2008. This did not occur.

20.     Between March and June of 2008, Sadr and her agents began sending emails to program participants advising them to contact their lenders and forward a dispute notice their loan, and further advised the participants that any lender attempting to foreclose was doing so illegally.

21.     By June of 2008, the program was effectively exposed as a complete scam. Notwithstanding this, Sadr continued to promise that a federal lawsuit would be pursued on behalf of all program participants, and forwarded an email indicating that "anyone who has not been completed by the end of the year will be given financial restitution to ensure they are

financially compensated." This was an admission against interest that restitution was owed.

22.     Given that Sadr and her Doe Companies ceased making mortgage payments, and given that Ms. Mascendaro was unable to pay her heightened mortgage payments after January of 2008, her lender instituted foreclosure proceedings. Ms. Mascendaro has since hired legal counsel in an attempt to negotiate a modification or otherwise stall foreclosure proceedings on her property.

23.     On or about December 8, 2008, Ms. Mascendaro forwarded a demand for restitution to Sadr. In early January of 2009, Sadr responded to Ms. Mascendaro and other program participants that restitution funds were being coordinated. This was another admission against interest that restitution was owed. To date, no restitution has been paid to Ms. Mascendaro.

24.     In March of 2009, Ms. Mascendaro received a letter from an attorney purporting to represent Sadr. The letter informed Ms. Mascendaro and other program participants that Sadr was subject to a federal investigation, but hoped to make restitution shortly. This was another admission against interest that restitution was owed.

25.     Sadr has not communicated with Ms. Mascednaro since this time, and Ms. Mascendaro has never received restitution in any form.

FACTS PERTAINING TO SAMUEL MERRILL

26.     In late 2006, Sadr's agent – Jennifer Barrett– who previously solicited Paula Mascendaro for the "free and clear" program, approached Paula's father, Samuel Merrill about

the program.

27.     After learning about the program, Samuel Merrill had two in person meetings with Sadr.  During both of the meetings, Sadr made a pitch about the free and clear program, as well as other investment strategies she and her Doe Companies were handling.  As with Paula Mascendaro, Mr. Merrill was shown a copy of an unencumbered deed as proof that the program worked.

28.     During the second meeting, which occurred in or about January of 2007, Sadr informed Mr. Merrill that she and one of her Doe Companies – Maximum Impact Financial– had lucrative investments in gold mines in Africa, and had lucrative real estate and condominium holdings in Baltimore, Maryland, many of which were occupied by members of the Baltimore Ravens football team.

29.     As a result of the meeting, Sadr convinced Mr. Merrill to refinance his property located at 18624 Hedgegrove Terrace, Olney, Maryland, 20832 and to invest $100,000 dollars into the gold mine and real estate ventures operated by Sadr and her Doe Companies.  In return for this investment, Sadr and her Doe Companies agreed to pay 10% on this investment monthly, which equates to $1,000 dollars per month.  Mr. Merrill was free to withdraw the entire amount of his investment at any time.  As a further inducement, Ms. Sadr additionally agreed to place Mr. Merrill in the free and clear program in return for his aforementioned investment.

30.     On or about February 16, 2007, Mr. Merrill refinanced his property in Olney, Maryland.

31.    On March 30, 2007, at Sadr's direction, Mr. Merrill wire transferred from Chevy Chase bank in Maryland the sum of $100,000 dollars to an account named "Maximum Impact Mortgages & Financial," which upon information and belief, is one of Sadr's entities.

32.    Sadr made the agreed upon monthly 10% payments of $1,000 dollars for a period of three months, then abruptly stopped.

33.    On or about August 4, 2008, Sadr sent Mr. Merrill a check for $2,000 dollars representing his investment payments for July and August.  The check was issued by "Schmidt Holdings, Inc," which, upon information and belief, is one of Sadr's entities.

34.    The check did not clear by reason of "insufficient funds."

35.    Despite repeated demands, Sadr has made no further monthly payments on the investment and has refused to return any of the $100,000 dollar principal investment.

36.    Mr. Merrill was given no information, brochures, or paperwork of any kind pertaining to the gold mine and real estate investments.

37.    Mr. Merrill has also never graduated from the "free and clear" program and continues to make mortgage payments on his refinanced loan as of the date of the filing of this complaint.

38.    In March of 2009, Mr. Merrill received a letter from an attorney purporting to represent Sadr.  The letter informed Mr. Merrill and other program participants that Sadr was subject to a federal investigation, but hoped to make restitution. This was an admission against interest that restitution was owed.

-10-

39.   Sadr has not communicated with Mr. Merrill since this time and, Mr. Merrill has never received restitution in any form.

## FICTITIOUS ENTITIES

40.   In the course of her dealings with the Plaintiffs, Sadr utilized and/or held herself out an as being associated with numerous purported business names, including but not limited to RLG, Inc., RLG processing, RTW, Maximum Impact Financial Services, Maximum Impact Mortgage and Financial, Property Logistics, and Schmidt Holdings.  To the extent that any of these are stand alone existing entities who had involvement with Sadr and the allegations herein, Plaintiffs have named them as fictitious Doe Companies Defendants herein and will amend the Complaint to name them in the course of discovery.

## COUNT ONE
### (Fraud and Deceit by Affirmative Misrepresentation)
### (Free and Clear Program– Both Plaintiffs)
### (Against All Defendants)

41.   Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 40 of the Complaint as if more fully set forth herein.

42.   The affirmative representations made by Sadr and her Doe Companies and their agents, as alleged herein concerning the free and clear program, were false.  Upon information and belief, Sadr and her Doe Companies utilized a ponzi scheme by which the monies invested by new program participants were used to satisfy mortgage obligations by participants who entered the program at an earlier time.  The claim by Sadr and her Doe Companies that they

intended to challenge mortgage encumbrances on newly refinanced loans was itself tantamount to fraud on the lending institutions and the Plaintiffs themselves.

43.     Said false representations were known by Sadr and her Doe Companies and their agents to be false at the time they were made, or were made with reckless indifference to the truth.

44.     Said false representations were made with the intent to deceive and defraud the Plaintiffs.

45.     Plaintiffs actually and justifiably relied on said false representations and was damaged as a direct and proximate result of said false representations in an amount according to proof.

46.     Said false representations were made with actual malice, evil motive, ill will, fraud and intent to injure.

**COUNT TWO**
**(Negligent Misrepresentation)**
**(Free and Clear Program– Both Plaintiffs)**
**(Against All Defendants)**

47.     Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 46 of the Complaint as if more fully set forth herein.

48.     The representations made by Sadr and her Doe Companies and their agents as alleged herein, who owed a duty of care to Plaintiffs, negligently asserted false statements concerning the free and clear program.  Upon information and belief, Sadr and her Doe

Companies utilized a ponzi scheme by which the monies invested by new program participants were used to satisfy mortgage obligations by participants who entered the program at an earlier time. The claim by Sadr and her Doe Companies that they intended to challenge mortgage encumbrances on newly refinanced loans was itself tantamount to fraud on the lending institutions and the Plaintiffs themselves.

49.     At the time Sadr and her Doe Companies and their agents made said negligent and false representations, they had no reasonable grounds for believing the statements to be true, and intended that the statements would be acted and relied upon by the Plaintiffs thereby causing loss or injury.

50.     Said negligent and false representations were made without regard for the truth of said representations.

51.     Plaintiffs actually and justifiably relied on said negligent and false representations and was damaged as a direct and proximate result of said false representations in an amount according to proof.

### COUNT THREE
### (Fraud and Deceit by Concealment, Nondisclosure or Suppression of Facts)
### (Free and Clear Program– Both Plaintiffs)
### (Against All Defendants)

52.     Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 51 of the Complaint as if more fully set forth herein.

53.     Sadr and her Doe Companies and their agents, as alleged herein, suppressed and actively concealed the true facts regarding the free and clear program.

-13-

54.     Sadr and her Doe Companies and their agents had exclusive knowledge of the true facts.

55.     Said suppression and concealment was undertaken with the intent to deceive and defraud the Plaintiffs.

56.     Sadr and her Doe Companies and their agents were under a legal duty to disclose to Plaintiffs the facts were suppressed.

57.     Plaintiffs actually and justifiably relied on the state of the facts as they were given and on the absence of the facts that were suppressed and concealed.

58.     Plaintiffs were damaged by said false representations in an amount according to proof.

59.     Said false representations were made with actual malice, evil motive, ill will, fraud and intent to injure.

## COUNT FOUR
### (Constructive Fraud)
### (Free and Clear Program– Both Plaintiffs)
### (Against All Defendants)

60.     Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 59 of the Complaint as if more fully set forth herein.

61.     The representations made by Sadr and her Doe Companies and their agents, as alleged herein, were false and deceptive.

62.     Said false and deceptive representations were known by Sadr and her Doe

Companies and their agents to be false and deceptive at the time they were made.

63.     Sadr and her Doe Companies and their agents gained advantage over Plaintiffs

from the false and deceptive representations.

64.     Sadr and her Doe Companies and their agents were in a special, confidential and

fiduciary relationship to Plaintiffs.

65.     Plaintiffs actually and justifiably relied on said false and deceptive

representations.

66.     Plaintiffs were damaged by said false representations in an amount according to

proof.

67.     Said false and deceptive representations were made with actual malice, evil

motive, ill will, fraud and intent to injure.

**COUNT FIVE**
**(Fraud and Deceit Based on Conspiracy)**
**(Free and Clear Program– Both Plaintiffs)**
**(Against All Defendants)**

68.     Plaintiffs incorporate by reference all allegations contained in paragraphs 1

through 67 of the Complaint as if more fully set forth herein.

69.     Plaintiffs allege and therefore aver that Sadr and her Doe Companies and their

agents knowingly and willingly conspired and agreed among themselves to fraudulently and

wrongfully obtain the assets of the Plaintiffs.

**COUNT SIX**
**(Fraud and Deceit by Affirmative Misrepresentation)**
**(Investments– Samuel Merrill)**
**(Against All Defendants)**

70.    Plaintiff Samuel Merrill incorporates by reference all allegations contained in

paragraphs 1 through 69 of the Complaint as if more fully set forth herein.

71.    The affirmative representations made by Sadr and her Doe Companies and their

agents, as alleged herein concerning the their lucrative holdings in African gold mines and real

estate in Baltimore, Maryland, and the return on these investments were false.  Upon information

and belief, Sadr and her Doe Companies had no such holdings and never intended to return

Plaintiff's principal nor pay the agreed upon monthly return on his investment.

72.    Said false representations were known by Sadr and her Doe Companies and their

agents to be false at the time they were made, or were made with reckless indifference to the

truth.

73.    Said false representations were made with the intent to deceive and defraud

Plaintiff Samuel Merrill.

74.    Plaintiff actually and justifiably relied on said false representations and was

damaged as a direct and proximate result of said false representations in an amount according to

proof.

75.    Said false representations were made with actual malice, evil motive, ill will,

fraud and intent to injure.

## COUNT SEVEN
### (Negligent Misrepresentation)
### (Investments– Samuel Merrill)
### (Against All Defendants)

76.     Plaintiff Samuel Merrill incorporates by reference all allegations contained in paragraphs 1 through 75 of the Complaint as if more fully set forth herein.

77.     The representations made by Sadr and her Doe Companies and their agents as alleged herein, who owed a duty of care to Plaintiffs, negligently asserted false statements concerning their lucrative holdings in African gold mines and real estate in Baltimore, Maryland, and the return on these investments.  Upon information and belief, Sadr and her Doe Companies had no such holdings and never intended to return Plaintiff's principal nor pay the agreed upon monthly return on his investment.

78.     At the time Sadr and her Doe Companies and their agents made said negligent and false representations, they had no reasonable grounds for believing the statements to be true, and intended that the statements would be acted and relied upon by the Plaintiff thereby causing loss or injury.

79.     Said negligent and false representations were made without regard for the truth of said representations.

80.     Plaintiff actually and justifiably relied on said negligent and false representations and was damaged as a direct and proximate result of said false representations in an amount according to proof.

-17-

**COUNT EIGHT**
**(Fraud and Deceit by Concealment, Nondisclosure or Suppression of Facts)**
**(Investments– Samuel Merrill)**
**(Against All Defendants)**

81.     Plaintiff Samuel Merrill incorporates by reference all allegations contained in paragraphs 1 through 80 of the Complaint as if more fully set forth herein.

82.     Sadr and her Doe Companies and their agents, as alleged herein, suppressed and actively concealed the true facts regarding the investments they induced Mr. Merill to enter.

83.     Sadr and her Doe Companies and their agents had exclusive knowledge of the true facts.

84.     Said suppression and concealment was undertaken with the intent to deceive and defraud the Plaintiff.

85.     Sadr and her Doe Companies and their agents were under a legal duty to disclose to Plaintiff the facts were suppressed.

86.     Plaintiff actually and justifiably relied on the state of the facts as they were given and on the absence of the facts that were suppressed and concealed.

87.     Plaintiff was damaged by said false representations in an amount according to proof.

88.     Said false representations were made with actual malice, evil motive, ill will, fraud and intent to injure.

## COUNT NINE
### (Constructive Fraud)
### (Investments– Samuel Merrill)
### (Against All Defendants)

89.    Plaintiff Samuel Merrill incorporates by reference all allegations contained in paragraphs 1 through 88 of the Complaint as if more fully set forth herein.

90.    The representations made by Sadr and her Doe Companies and their agents, as alleged herein, were false and deceptive.

91.    Said false and deceptive representations were known by Sadr and her Doe Companies and their agents to be false and deceptive at the time they were made.

92.    Sadr and her Doe Companies and their agents gained advantage over Plaintiff from the false and deceptive representations.

93.    Sadr and her Doe Companies and their agents were in a special, confidential and fiduciary relationship to Plaintiff.

94.    Plaintiffs actually and justifiably relied on said false and deceptive representations.

95.    Plaintiff was damaged by said false representations in an amount according to proof.

96.    Said false and deceptive representations were made with actual malice, evil motive, ill will, fraud and intent to injure.

## COUNT TEN
### (Fraud and Deceit Based on Conspiracy)
### (Investments– Samuel Merrill)
### (Against All Defendants)

99.     Plaintiff Samuel Merrill incorporates by reference all allegations contained in paragraphs 1 through 98 of the Complaint as if more fully set forth herein.

100.    Plaintiff alleges and therefore avers that Sadr and her Doe Companies and their agents knowingly and willingly conspired and agreed among themselves to fraudulently and wrongfully obtain the assets of the Plaintiff.

## COUNT ELEVEN
### (Breach of Contract- Paula Mascendaro)
### (Against All Defendants)

101.    Plaintiff Paula Mascendaro incorporates by reference all allegations contained in paragraphs 1 through 100 of the Complaint as if more fully set forth herein.

102.    On or after January 13, 2006, Plaintiff Paula Mascendaro and Sadr and her Doe Companies entered into an oral or written contract in Maryland whereby Defendants would receive $105,456 dollars in return for placing Paula Merrill in the free and clear program.

103.    Plaintiff performed all of the conditions, promises and covenants required to be performed in accordance with the terms and conditions of the contract by giving Sadr and her Doe Companies the aforementioned sum of $105,456 dollars, and following all directions pursuant to the performance of the contract.

104.    On or about November 30, 2007, Sadr and her Doe Companies breached the agreement by failing to make monthly mortgage payments under the free and clear program, and

-20-

further failed to deliver her property unencumbered of any security interests as promised. Sadr and her Doe Companies also breached the agreement by failing to return Plaintiff's principal sums or restitution of any kind.

105.   Demands have been made on Defendants for repayment, and Defendants have failed and continued to refuse to repay the aforementioned sums or otherwise provide restitution.

106.   As a result of the breach, Sadr and her Doe Companies are obligated to pay the entire sum certain of $105,456 dollars given by Plaintiff, as well as any and all damages which naturally flow from the breach, including but not limited to interest and attorneys fees and costs incurred in defending foreclosure on Plaintiff's property in an amount according to proof.

## COUNT TWELVE
### (Breach of Contract- Samuel Merrill)
### (Against All Defendants)

107.   Plaintiff Samuel Merrill incorporates by reference all allegations contained in paragraphs 1 through 106 of the Complaint as if more fully set forth herein.

102.   On or after March 30, 2007, Plaintiff Samuel Merrill and Sadr and her Doe Companies entered into an oral or written contract in Maryland whereby Defendants would receive $100,000 dollars in return for investments at a rate of 10% per month, or $1,000 dollars, as well as for placing Samuel Merrill in the free and clear program.

103.   Plaintiff performed all of the conditions, promises and covenants required to be performed in accordance with the terms and conditions of the contract by giving Sadr and her Doe Companies the aforementioned sum of $100,000 dollars, and following all directions

pursuant to the performance of the contract.

104.    On or about June 30, 2007, Sadr and her Doe Companies breached the
agreement by failing to make monthly investment payments, and further failed to deliver his
property unencumbered of any security interests as promised.  Sadr and her Doe Companies also
breached the agreement by failing to return Plaintiff's principal sums or restitution of any kind.

105.    Demands have been made on Defendants for repayment, and Defendants have
failed and continued to refuse to repay the aforementioned sums or otherwise provide restitution.

106.    As a result of the breach, Sadr and her Doe Companies are obligated to pay the
entire sum certain of $100,000 dollars given by Plaintiff, plus the $1,000 dollar monthly return
on investment, which, at the time of the filing of this Complaint, amounts to 28 months or
$28,000 dollars.  Defendants are also responsible for any and all damages which naturally flow
from the breach, in an amount according to proof.

## COUNT THIRTEEN
### (Conversion- Paula Mascendaro)
### (Against All Defendants)

107.    Plaintiff Paula Mascendaro incorporates by reference all allegations contained in
paragraphs 1 through 106 of the Complaint as if more fully set forth herein.

108.    At all times herein mentioned, Sadr and her Doe Companies unlawfully
exercised ownership, dominion, and control over the monies advanced by Plaintiff by using
them for purposes other obtaining her property free and unencumbered, acts which were
inconsistent with Plaintiff's rights. Alternatively, Plaintiff was the rightful owner and was

entitled to possession of said sums based on Sadr's admissions against interest that restitution was owed, and upon Sadr's failure to returns such sums.

109.    Demands have been made on Defendants for repayment, and Defendants have failed and continued to refuse to repay the aforementioned sums or otherwise provide restitution.

110.    Sadr and her Doe Companies have converted the sums of $105,456 dollars by wrongfully ignoring and disposing of Plaintiff's right, resulting in damages.

111.    The Defendants actions were made with actual malice, evil motive, ill will, fraud and intent to injure.

### COUNT FOURTEEN
### (Conversion- Samuel Merrill)
### (Against All Defendants)

112.    Plaintiff Samuel Merrill incorporates by reference all allegations contained in paragraphs 1 through 111 of the Complaint as if more fully set forth herein.

113.    At all times herein mentioned, Sadr and her Doe Companies unlawfully exercised ownership, dominion, and control over the monies advanced by Plaintiff for investment purposes.  Alternatively, Plaintiff was the rightful owner and was entitled to possession of said sums based on Sadr's admissions against interest that restitution was owed, and upon Sadr's failure to returns such sums.

114.    Demands have been made on Defendants for repayment, and Defendants have failed and continued to refuse to repay the aforementioned sums or otherwise provide restitution.

115.    Sadr and her Doe Companies have converted the sums of $100,000 dollars by

wrongfully ignoring and disposing of Plaintiff's right, resulting in damages.

116.    The Defendants actions were made with actual malice, evil motive, ill will, fraud and intent to injure.

**COUNT FIFTEEN**
**(Unjust Enrichment- Paula Mascendaro)**
**(Against All Defendants)**

117.    Plaintiff Paula Mascendaro incorporates by reference all allegations contained in paragraphs 1 through 116 of the Complaint as if more fully set forth herein.

118.    Plaintiff has advanced significant monies for the benefit of Sadr and her Doe Companies for participation in the free and clear program.

119.    Defendants appreciated the benefit, and thereafter accepted and used these monies in such a manner and under such other circumstances as to make it inequitable for Defendants to retain these monies.

120.    As a direct and proximate result of such conduct, Plaintiff has suffered and will continue to suffer substantial damages including but not limited to loss of monies advanced and paid to Sadr and her Doe Companies in the amount of $105,456 dollars.

**COUNT FIFTEEN**
**(Unjust Enrichment- Samuel Merrill)**
**(Against All Defendants)**

121.    Plaintiff Samuel Merrill incorporates by reference all allegations contained in paragraphs 1 through 120 of the Complaint as if more fully set forth herein.

122.    Plaintiff has advanced significant monies for the benefit of Sadr and her Doe

-24-

Companies for investment.

123.    Defendants appreciated the benefit, and thereafter accepted and used these monies in such a manner and under such other circumstances as to make it inequitable for Defendants to retain these monies.

124.    As a direct and proximate result of such conduct, Plaintiff has suffered and will continue to suffer substantial damages including but not limited to loss of monies advanced and paid to Sadr and her Doe Companies in the amount of $100,000 dollars.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment and the following relief against Defendants, jointly and severally as follows:

(a)    For Paula Mascendaro, the sum certain of $105,456 dollars, representing the initial sums paid to Sadr and her Doe Companies;

(b)    For Paula Merrill, the sum certain of $128,000 dollars, representing the initial sums paid to Sadr and her Doe Companies and the unpaid monthly return on investment owed from the time period payments were stopped through the filing of this Complaint;

( c)    For both Plaintiffs, consequential and other economic damages to be proven at trial;

(d)    For both Plaintiffs, compensatory damages in an amount to be determined by a trier of fact;

(e)    For both Plaintiffs, punitive damages in an amount to be determined by

a trier of fact;

(f)     For both Plaintiffs, pre and post-judgment interest, costs of suit, and any other

such other relief as the court deems equitable, just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury in this action.

Respectfully Submitted,

Timothy W. Romberger
Fed. Bar No. 014408
1025 Connecticut Avenue, N.W.
Suite 1000
Washington, D.C.  20046
(202) 248-5053
(202) 478-0456 Fax
Email: timromberger1@comcast.net
*(Counsel for Plaintiffs)*

AND

Sharon M. Donahue
Fed. Bar No. 027439
The Law Office of Sharon M. Donahue
116 Broad Street, Suite 4
Berlin, Maryland 21811
410-208-9555
Email: sdonahue@sharondonahue.com
*(Counsel for Plaintiffs)*

Date:   October 22, 2009

-26-