IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| PAULA MASCENDARO, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Case No. 09-cv-02787-AW |
| | ) | |
| LINDA SADR, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

# **MEMORANDUM OPINION**

Pending before the Court is Defendant Linda Sadr's Jurisdictional Challenge (Parts 1 and 2), which the Court will treat as a Motion to Dismiss for Lack of Personal Jurisdiction. (Doc. No. 5.) The Court has reviewed the parties' motions and all supporting documents and finds that no hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2008). For the reasons articulated below, the Court **DENIES** Defendant's Jurisdictional Challenge.[1]

## **Factual Background**

Paula Mascendaro and Samuel Merril, (collectively "Plaintiffs") allege that Linda Sadr, through several as of yet unknown companies, entities, or associations, engaged in an asset transfer or ponzi scheme. The Plaintiffs allege that Ms. Sadr encouraged property owners in Maryland, the District of Columbia, and Virginia to refinance their homes on the promise that monies given to Ms. Sadr would be used in high return investments, and/or that their homes would be owned free and clear within eighteen months.

---

[1] The Defendant claims that since there are twelve court districts in Maryland, she was unsure of where to respond to the complaint. However, as the complaint clearly states that the case was filed in United States District Court for the District of Maryland, the number of state districts is immaterial. Additionally, the Defendant was able to respond as evidenced by her jurisdictional challenge. Insofar as the Defendant has alleged insufficient notification of which to respond to Plaintiffs complaint under Part 2 of her challenge, the Court denies this motion.

The full details of the Plaintiffs' complaint need not be set forth here. In relevant part, Ms. Mascendaro alleges that in 2005, she met with an agent of Ms. Sadr and was informed about a "free and clear" refinancing program. Ms. Mascendaro alleges that the program required the investor to refinance his or her home at a rate, and in an amount, to be determined by Ms. Sadr; that the monies obtained through the refinancing would be given to Ms. Sadr; and, in return for the investment, Ms. Sadr would pay off the refinanced mortgage amounts within a period of eighteen months, at which point in time the property would be owned clear of mortgage encumbrances. Ms. Mascendaro alleges that she was promised a full restoration of all monies previously given as well as mortgage payment assistance if the property was not cleared from all mortgage encumbrances within this time frame. Ms. Mascendaro joined the program and refinanced her home in Burtonsville, Maryland, in January 2006. During the period between the refinancing and November 2007, Ms. Mascendaro allegedly received numerous promises and representations that the property was in the process of becoming free and clear. During this time, Ms. Mascendaro was asked for, and subsequently provided, two separate power of attorney documents granting Ms. Sadr the ability to represent her on the issues relating to her mortgages, notes, debts, and liens. In November 2007, Ms. Sadr stopped making monthly payments on Ms. Mascendaro's property.

Between November 2007 and June 2008, Ms. Mascendaro received instructions from Ms. Sadr, or her agents, that properties would still be delivered free and clear, but that in the meantime, property owners would need to fight off foreclosure actions by lenders. Throughout the summer of 2008, Ms. Sadr promised restitution to program participants if their homes were still encumbered by the end of 2008. In December 2008, Ms. Mascendaro demanded restitution from Ms. Sadr. In January 2009, Ms. Sadr responded that restitution funds were being

coordinated. However, in March 2009, Ms. Mascendaro claims to have received a letter from Ms. Sadr's attorney informing Ms. Mascendaro that Ms. Sadr was the subject of a federal investigation and that restitution would be made shortly.[2] To date, Ms. Mascendaro claims to have received no restitution, and that she has been forced to hire legal counsel to negotiate foreclosure proceedings on her property.

The facts of Mr. Merrill's claims are similar to those of Ms. Mascendaro's except that he was encouraged to refinance his home in Olney, Maryland, in order to invest $100,000 in an African gold mine and real estate ventures allegedly operated by Ms. Sadr. Mr. Merrill claims that in return for this investment, Ms. Sadr promised to pay 10% of the initial investment per month as well as enroll him in the same "free and clear" program that Ms. Mascendaro described. In February and March of 2007, Mr. Merrill refinanced his home and transferred $100,000 to an entity believed to be owned or controlled by Ms. Sadr. While Mr. Merrill received his monthly checks for three months, he claims that in August 2008, the checks stopped clearing by reason of insufficient funds. Mr. Merrill states that despite his repeated demands, Ms. Sadr has made no further monthly payments or returned any of the principal investment. Additionally, Mr. Merrill claims similar circumstances as Ms. Mascendaro regarding the failure of Ms. Sadr to fulfill her promise of rendering the refinanced property unencumbered by mortgages within eighteen months.[3]

On October 22, 2009, Plaintiffs filed a complaint with this Court, wherein they allege that Ms. Sadr committed Fraud and Deceit by Affirmative Misrepresentation (Counts I and VI), Negligent Misrepresentation (Counts II and VII), Fraud and Deceit by Concealment, Nondisclosure or Suppression of Facts (Counts III and VIII), Constructive Fraud (Counts IV and

---

[2] There is nothing in the current record which verifies if, in fact, Ms. Sadr is or has been the subject of a criminal investigation.

[3] The record does not reflect whether Mr. Merrill's property has been subject to foreclosure proceedings.

IX), Fraud and Deceipt Based on Conspiracy (Counts V and X), Breach of Contract (Counts XI and XII), Conversion (Counts XII and XIV), and Unjust Enrichment (Counts XV and XVI). On November 30, 2009, Defendant filed, as a pro se litigant, a Jurisdictional Challenge (Parts 1 and 2). (Doc. No. 5.) The Plaintiffs responded on December 10, 2009. (Doc. No. 6.)

## **Analysis**

This case comes before the Court through its jurisdiction under 28 U.S.C. §§ 1332 and 1441(b) on the grounds that there is complete diversity of citizenship among the parties and the matter exceeds the sum of $75,000.00, exclusive of interests and costs. The Defendant, Linda Sadr, comes as a pro se party, arguing that as a Virginia resident, she is not subject to personal jurisdiction in the state of Maryland. She claims that she does not own businesses located in Maryland, nor does she conduct business in Maryland. As such, the Court should decline to exercise personal jurisdiction over her. Additionally, she requests that if the jurisdictional issue is decided against her that the Court grant her time to answer the original complaint.

The Plaintiffs respond that it is appropriate for this Court to exercise personal jurisdiction over Ms. Sadr because her conduct and the conduct of her agents are sufficient to satisfy Maryland's long-arm statute. They allege that Ms. Sadr engaged in conduct targeting assets in Maryland, transacted business in Maryland, and was present in the state on numerous occasions for the purposes of conducting activities in furtherance of the alleged ponzi scheme.

When personal jurisdiction is properly challenged under Fed. R. Civ. P. Rule 12(b)(2), the burden is on the plaintiff to ultimately prove grounds for jurisdiction. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003); *Mylan Lab., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993). However, if the district court decides a pretrial personal jurisdiction motion without conducting an evidentiary hearing, the plaintiff is only required to

make a prima facie showing of personal jurisdiction by the preponderance of the evidence. *Carefirst*, 334 F.3d at 396. When examining this prima facie case, the court must consider all disputed facts and reasonable inferences in favor of the plaintiff. *See id.*; *Mylan Lab.*, 2 F.3d at 60.

A district court's exercise of personal jurisdiction over a nonresident defendant must comply with the requirements of both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment. *Carefirst*, 334 F.3d at 396. As Maryland has consistently interpreted its long-arm statute to expand personal jurisdiction to the limits of the Due Process Clause, *see Camelback Ski Corp. v. Behning*, 513 A.2d 874, 876 (Md. 1986), the question becomes whether this court's exercise of jurisdiction fulfills the requirements of due process. *Carefirst,* 334 F.3d at 396-97. Thus, there is no need to examine the specific requirements of the Maryland long-arm statute. *See e.g.*, *id.*; *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002) (conducting only a due process analysis for a personal jurisdiction issue involving internet contacts with Maryland).

Personal jurisdiction over a nonresident defendant comports with due process if the defendant has "minimum contacts" with the forum, such that to require the defendant to defend its interests in that state "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The initial inquiry in a personal jurisdiction dispute is whether the defendant's contacts with the forum state also provide the basis for the suit. *Carefirst*, 334 F.3d at 397. If so, the court looks to see if these contacts establish "specific jurisdiction." *Id.* If the contacts with the forum state are not the basis for the dispute, then the plaintiffs must bear the burden of showing general jurisdiction over the defendant through "continuous and systematic" relations and connections with the forum state.

*ALS Scan, Inc.*, 293 F.3d at 712.  In this case, because the Plaintiffs make a prima facie case establishing specific jurisdiction, there is no need to address the possibility of general jurisdiction.

In determining whether specific jurisdiction exists, the Fourth Circuit has articulated that district courts should consider three factors: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'"  *Carefirst,* 334 F.3d at 397.  This requires the court to look at the "quality and nature" of the contracts, not merely count the number of  contacts.  *Id.* (*quoting Nichols v. G.D. Searle & Co.*, 783 F. Supp. 233, 238 (D. Md. 1992)).  In this case, all three elements are satisfied.

First, the Plaintiffs present compelling evidence that Ms. Sadr has repeatedly availed herself of the privileges and protection of Maryland law.  When an individual invokes the benefits and protection of Maryland's laws, she is considered to have purposely availed herself of the privilege of conducting activities within the State for the purposes of specific jurisdiction.  *See Maryland Nat'l Bank v. M/V Tanicorp I*, 796 F. Supp. 188, 192-93 (1992).  Here, Defendant Sadr has been a named plaintiff in at least twenty-eight cases before various Maryland Circuit Courts within the past several years, all appearing to arise out of the "free and clear" program at issue in this case.  (Doc. No. 6, Ex. 4.)  As a plaintiff in these cases, Ms. Sadr has used Maryland courts to further her, and her clients, financial interests.  These actions indicate that she has purposefully availed herself of Maryland's laws and procedures, thus satisfying the first requirement for specific jurisdiction.

Second, Ms. Sadr appears to have directed the refinancing activities in question towards Maryland residents. Here, the Plaintiffs have shown that Ms. Sadr had a "manifest intent" to target property owners in Maryland. *See Young v. New Haven Advocate*, 315 F.3d 256, 264 (4th Cir. 2002). With respect to Ms. Mascendaro, Ms. Sadr's alleged agent was clearly targeting property owners in Maryland. The agent allegedly told Ms. Macendaro that the refinancing program was available to select property owners in Maryland. Additionally, e-mails from Ms. Sadr repeatedly referenced her efforts to help Maryland property owners avoid foreclosure, and provide information and advice specific to property owners in Montgomery County and Prince Georges County, Maryland. (Doc. No. 6, Ex. 2.) While a mere internet posting may be insufficient to establish personal jurisdiction absent some level of targeting the audience in question, in this case, Ms. Sadr's emails appear to be sent with intent of causing, informing, and guiding action by property owners in the state of Maryland. *See Young*, 315 F.3d at 263-64 (noting if a website posting had encouraged action in Virginia instead of Connecticut, it might have sufficed to show activity directed at the forum state for purposes of personal jurisdiction). With respect to Mr. Merrill, he claims that Ms. Sadr met with him personally in Maryland to discuss the refinancing and investment programs and to encourage his participation in the programs. These facts indicate that Ms. Sadr directed the refinancing activities in question at property owners within the state of Maryland, thus satisfying the second requirement for specific jurisdiction.

Third, exercising personal jurisdiction would be constitutionally reasonable in this case. As noted in *Nichols v. G.D. Searle & Co.*, a constitutionally reasonable exercise of jurisdiction should not offend "traditional notions of fair play and substantial justice." 783 F. Supp. at 241, (*quoting Int'l Shoe*, 326 U.S. at 316). Thus, the court looks to see if it was reasonable for the

defendant to foresee being required to submit to the burdens of litigation in the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). Here, reasonableness is satisfied for two reasons. First, both Plaintiffs were required to execute power of attorney documents, granting Ms. Sadr authority to represent the interests of the properties described therein. (Doc. No. 6, Ex. 2, 3.) The properties described in these documents clearly state that they were located in Maryland. Thus, it would be reasonable for Ms. Sadr to foresee the possibility of litigation involving these properties to arise in Maryland. Second, as previously mentioned, Ms. Sadr did in fact enter into litigation in Maryland involving other properties impacted by this refinancing plan. This reaffirms that it would not be constitutionally unreasonable to subject Ms. Sadr to personal jurisdiction in Maryland.

## **Conclusion**

For the reasons articulated above, the Court **DENIES** Defendant's Jurisdictional Challenge (Part 1 and 2).[4] An Order shall follow this Memorandum Opinion.

    April 8, 2010  
    Date

    /s/  
    Alexander Williams, Jr.  
    United States District Court Judge

---

[4] While the Plaintiffs argued that this Jurisdictional Challenge constitutes a frivolous motion designed to delay proceedings and is worthy of sanctions, this Court disagrees. A Defendant should be allowed to reasonably argue the theories available to her by law. Accordingly, Plaintiffs' request for sanctions is denied.